OPINION OF THE COURT
Vincent M. Del Giudice, J.
The defendant was convicted, in federal district court, of distribution of child pornography (18 USC §§ 2252A [a] [3] [B]; 2252 [b] [1]) and was sentenced to 60 months’ imprisonment and 15 years’ postrelease supervision.
On February 1, 2012, the Board of Examiners of Sex Offenders (also referred to as the Board) prepared a case summary and a risk assessment instrument (also referred to as RAJ) which assessed the defendant a total of 30 points, a presumptive level one offender, but recommended an upward departure to risk level three, based primarily upon a clinical evaluation which strongly recommended that the defendant be regarded as a high risk offender in need of intense monitoring, and based upon the compulsive nature of defendant’s deviant behavior. On February 22, 2012, the People submitted an amended risk assessment instrument which assessed the defendant as a risk level two offender, with 80 points, but also recommended an upward departure, to designate the defendant a risk level three offender.
*476 On April 28, 2012, the defendant, through counsel, submitted a motion seeking to be adjudicated a risk level one offender. The People filed an answer in opposition, dated May 23, 2012. The defense filed a supplementary set of papers, dated June 21, 2012, requesting the court accept the risk assessment recommendation of the Board but deny the Board and the prosecution’s request for an upward departure.
After a number of adjournments, which were required to allow the parties to obtain various forensic reports and to properly prepare the moving papers, an evidentiary hearing was conducted before this court on July 11, 2012. At said hearing, all of the moving papers and reports were admitted into evidence, on consent of both parties, and the court heard sworn testimony from the defendant. The court then heard the arguments of counsel.
Under New York’s Sex Offender Registration Act (hereafter SORA), a convicted offender of certain specified sexual offenses must register as a sex offender. The extent of the offender’s obligations varies, depending on whether he is classified as a level one, two or three offender. Offenders seek to be classified at the lowest level possible, since it involves fewer reporting obligations and provides more privacy from public notification and publication. Classifications are determined, in part, by compiling the number of points assessed under standards promulgated under SORA.
The defendant accepts the Board’s recommendation that he be assessed 30 points, under risk factor 5, for the age of the victims involved, but challenges the Board’s recommendation for an upward departure to risk level three. Defendant contends he is entitled to be assessed a level one offender because: (1) he completed a voluntary one-year sex offender treatment program at a federal institution; (2) he passed a sexual history polygraph, which concluded that as an adult the defendant has had no history of sexual contact, or online communications, with any minor; and (3) he does not meet the clinical diagnosis of pedophilia or hebephilia, in that he has never advanced beyond looking at pornographic pictures and masturbating.
The People contend the defendant should be assessed an additional 30 points, under risk factor 3, for the number of the victims, and an additional 20 points, under risk factor 7, for the nature of the defendant’s relationship with the victims, thereby pushing the defendant’s total number of assessed points into presumptive risk level two.
*477 At the initial determination proceeding, the prosecution bears “the burden of proving the facts supporting the determinations sought by clear and convincing evidence” (Correction Law § 168-n [3]).
After reviewing the relevant and historic case law, one cannot dispute the total risk factor score recommended by the Assistant District Attorney. “Where words of a statute are free from ambiguity and express plainly, clearly and distinctly the legislative intent, resort may not be had to other means of interpretation” (People v Campbell, 98 AD3d 5, 10 [2d Dept 2012]). For the past four years, possessors of child pornography have regularly been assessed points under risk factors 3, 5 and 7, creating a minimum of 80 assessed points (People v Johnson, 11 NY3d 416 [2008]; People v Bretan, 84 AD3d 906 [2d Dept 2011]; People v Perahia, 57 AD3d 865 [2d Dept 2008]; People v Yen, 33 Misc 3d 1234[A], 2011 NY Slip Op 52240[U] [2011]; see also People v Poole, 90 AD3d 1550 [4th Dept 2011]; People v Harding, 87 AD3d 627 [2d Dept 2011], lv denied 17 NY3d 716 [2011]; People v Stella, 71 AD3d 970 [2d Dept 2010], lv denied 15 NY3d 702 [2010]).
On June 1, 2012, the Board of Examiners published a position paper, in which the Board, citing People v Johnson (11 NY3d 416 [2008]) and People v Poole (90 AD3d 1550 [2011]), announced the Board’s new policy not to score offenders of child pornography under risk factor 3 (number of victims) or under risk factor 7 (stranger relationship). The Board noted that scoring all child pornography cases for number of victims and stranger relationship “produces an unintended, anomalous result as the majority of offenders convicted of child pornography offenses will be scored the same when there are clearly vast differences amongst these types of offenders” (NY St Bd of Examiners of Sex Offenders, Scoring of Child Pornography Cases Position Statement 611/12 at 1).
Defendant contends that as per the Board’s policy paper dated June 1, 2012, it has been the policy of the Board not to score offenders convicted of possessing child pornography with points for either risk factor 3 (number of victims) or risk factor 7 (relationship to the victim).[1] Defendant contends that since the Board should be the ultimate interpreter of the administrative rules they have set forth in this area, this court should accept *478 the Board’s original assessment of 30 points and find the defendant a risk level one offender.
“It is well-established that an administrative agency’s interpretation of its own regulations is entitled to substantial deference and should be upheld unless it is without a rational basis” (Matter of Choices Women’s Med. Ctr. v McBarnette, 217 AD2d 623, 624 [2d Dept 1995]) or “it is unreasonable or irrational” (Seenaraine v Securitas Sec. Servs. USA, Inc., 37 AD3d 700, 701 [2d Dept 2007], lv denied 9 NY3d 813 [2007]; see also People v Faison, 46 AD3d 316, 316 [1st Dept 2007], lv denied 10 NY3d 705 [2008]; Matter of Nilsson v Department of Envtl. Protection of City of N.Y., 28 AD3d 773, 775 [2d Dept 2006]; Matter of Arif v New York City Taxi & Limousine Commn., 3 AD3d 345, 346 [1st Dept 2004]; Vink v New York State Div. of Hous. & Community Renewal, 285 AD2d 203, 209-210 [1st Dept 2001]; Matter of Herzog v Joy, 74 AD2d 372, 375 [1st Dept 1980], affd 53 NY2d 821 [1981]).
Since the court must give deference to the Board of Examiners’ interpretation of its own rules and regulations, and since the newly developed scoring policy in cases of possessors of child pornography is in line with the views expressed by the Court of Appeals in Johnson,[2] this court finds that there is a rational basis for the Board’s assessment determination and it was, and is, appropriate to score defendant as a presumptive risk level one offender.[3]
Regardless of the court’s risk level assessment (whether the court finds the defendant a risk level one or two offender), the People request an upward departure, to risk level three, based upon: (1) defendant’s compilation of numerous child pornography clips into a video that lasts just under three hours; (2) defendant’s rationalization that he was merely addicted to pornography, thereby minimizing his personal responsibility; and (3) defendant’s history of sexual dysfunction, which includes sexual relationships with two separate cousins.
“To justify an upward departure from a presumptive risk classification, an aggravating factor must exist which was not otherwise adequately taken into consideration by the risk assessment guidelines, and the court’s finding of such a factor must be supported by clear and convincing evidence” (.People v *479 Jamison, 96 AD3d 1237, 1238 [3d Dept 2012], quoting People v Brown, 45 AD3d 1123, 1124 [3d Dept 2007], lv denied 10 NY3d 703 [2008]). “Where the case involves an application by the People for an upward departure, this evidentiary burden is mandated by statute, since the district attorney bears the burden of proving the facts supporting the determinations sought by clear and convincing evidence” (People v Wyatt, 89 AD3d 112, 123 [2d Dept 2011], lv denied 18 NY3d 803, citing Correction Law § 168-n [3]; People v Walker, 67 AD3d 760, 761 [2d Dept 2009], lv denied 14 NY3d 702 [2010]; People v Hill, 50 AD3d 990, 990-991 [2d Dept 2008], lv denied 11 NY3d 701 [2008]; People v Miranda, 24 AD3d 909, 910 [3d Dept 2005]).
“[W]ith respect to upward departures, the threshold condition triggering the court’s exercise of discretion is twofold: (1) as a matter of law, the cited aggravating factor must tend to establish a higher likelihood of reoffense or danger to the community and be of a kind, or to a degree, that is otherwise not adequately taken into account by the Guidelines; and (2) the People must prove the facts in support of the aggravating factor by clear and convincing evidence. Upon satisfaction of that threshold condition, the SORA court may, in its discretion, choose to upwardly depart or make no change. Where the threshold is not met, however, the SORA court may not upwardly depart and must impose the presumptive risk level” (Wyatt, 89 AD3d at 123; see also People v Campbell, 98 AD3d 5, 13-14 [2012]).
In support of their request for an upward departure to risk level three, the People, citing People v Bretan (84 AD3d 906 [2011] [offender’s attempt to have a video made featuring the violent sexual abuse of a 10 year old was sufficient aggravating factor for an upward departure]), state that in addition to downloading and distributing child pornography, for which he was convicted, the defendant compiled a master video, containing segments of shorter pornographic videos, to create a compilation of child pornography that is two hours and 45 minutes in length. In addition, the People, citing People v Vancura (95 AD3d 852 [2d Dept 2012] [defendant failed to participate meaningfully in treatment program and denied victimizing children by possessing child pornography]) and People v Lesch (38 AD3d 1129 [3d Dept 2007], lv denied 8 NY3d 816 [2007] [defendant downloaded pornographic stories involving young girls but denied abusing children by his conduct]), argue that *480 the offender before this court similarly rationalized that he was simply addicted to pornography, thereby minimizing his personal responsibility.[4]
Each of the cases cited by the People is factually distinguishable. Unlike the offender in Bretan, the defendant herein did not seek to create original pornographic content, much less violent content, but simply compiled previously downloaded videos into a new, and longer, master disc. Unlike the offenders in Vaneara and Lesch, the defendant herein participated in a voluntary sex offender treatment program while out on bail and completed a one-year sex offender treatment program at a federal correctional facility.
Therefore, I find that the People have failed to establish, by clear and convincing evidence, a higher likelihood of reoffense or danger to the community that was not adequately taken into account by the Risk Assessment Guidelines. Since the People have failed to meet the threshold condition triggering the court’s exercise of its discretion, this court may not upwardly depart and impose an enhanced risk level.
In anticipation of the court assessing the defendant to be a presumptive risk level two offender, based on the prior case law, the defendant requests a downward departure to risk level one. For purposes of appellate review, the court will consider this request in lieu of the recent scoring policy change by the Board and in the absence of appellate authority on point.
“The same consideration is inapplicable to a sex offender’s request for a downward departure made during the initial determination proceeding. Rather, the countervailing interests of the State are relevant to the question of the appropriate evidentiary burden to place on the sex offender” (Wyatt, 89 AD3d at 127).
In Wyatt, the Second Department held that
“the preponderance standard used in ordinary civil proceedings is applicable to the sex offender’s initial factual burden of establishing the existence of an appropriate mitigating factor . . . [However] the sex offender’s successful factual showing does no more than establish the threshold condition for the SORA court’s exercise of its discretion . . . [T]he *481 sex offender meets this threshold condition by satisfying a twofold showing: (1) identifying, as a matter of law, an appropriate mitigating factor, namely, a factor which tends to establish a lower likelihood of reoffense or danger to the community and is of a kind, or to a degree, that is otherwise not adequately taken into account by the Guidelines; and (2) establishing the facts in support of its existence by a preponderance of the evidence. At that point, the SORA court may exercise its discretion to grant or deny the departure application based upon an examination of all circumstances relevant to the offender’s risk of reoffense and danger to the community” (Wyatt, 89 AD3d at 127-128).
In this case, the defense requests a downward departure, from presumptive risk level two that is proposed by the prosecutor, to risk level one. Citing People v Johnson (11 NY3d 416 [2008]), counsel asserts that the risk assessment instrument is not written with possession of child pornography in mind. The Johnson court stated that the literal application of the risk assessment instrument to child pornography cases creates an unfair and anomalous result, especially with respect to risk factor 7, which deals with the relationship of the offender to the victim. The court stated that although risk factor 7 “unambiguously” requires the assessment of 20 points against the offender, because the children depicted in the videos are “strangers” to the defendant within the meaning of the statute, “neither the Board nor the court was bound to choose the risk level indicated by defendant’s point total” (Johnson, 11 NY3d at 421).[5]
Counsel for the defendant contends that should the court score the defendant as a risk level two offender, this court should, nevertheless, grant the motion for downward departure. In support thereof, counsel asserts that after reviewing a detailed federal probation report and various forensic documents, Federal District Court Judge Nicholas Garaufis found sufficient cause to downwardly depart from the federal sentencing guidelines at the time of the defendant’s sentencing on June 15, 2007. Although the defendant agreed to a plea which could include up to 168 months of prison, Judge Garaufis ultimately sentenced the defendant to 60 months of incarceration and 15 *482 years of supervised release, with special conditions. In granting the defendant a greatly reduced sentence, Judge Garaufis cited: the defendant’s acceptance of responsibility; his apparently sincere feelings of remorse; his understanding of the harm inflicted and his empathy for abused children; his positive progress in a sex offender treatment program while at liberty; and the conclusions of the forensic reports submitted by various mental health professionals.
Counsel for the defendant further asserts: the defendant has completed a sex offender treatment program during his period of federal incarceration and has resumed outpatient treatment at the New York Center for Neuropsychology; the defendant’s behavior while supervised by pretrial services, and his behavior while incarcerated, had been exemplary; since his release from prison, the defendant has been employed as a parking attendant, was promoted to a managerial position and was elected by his peers to be their union delegate; based on reports submitted by New York Forensics, the defendant does not have a psychiatric diagnosis which is causally related to a risk of recidivism.
With respect to the defendant’s progress since his arrest and prosecution in this case, case law establishes that in order for a downward departure to be granted on this basis alone, the offender’s response to treatment must be “exceptional” (People v Watson, 95 AD3d 978, 979 [2d Dept 2012]; People v Washington, 84 AD3d 910, 911 [2d Dept 2011], lv dismissed 17 NY3d 849 [2011]; People v Rodriguez, 33 Misc 3d 1236[A], 2011 NY Slip Op 52257[U] [2011]), since risk factor 13 assesses additional points only if the defendant’s conduct while confined, or while supervised, is less than satisfactory and makes no accommodation for the offender whose response to treatment has been exceptional.
A downward departure can be granted, however, even in the absence of evidence that a defendant’s response to treatment has been “exceptional” (People v McFarland, 35 Misc 3d 1243[A], 2012 NY Slip Op 51137[U] [2012] [expert testimony from clinical psychologist that elderly offender’s response to treatment over the past two years, coupled with his sobriety, placed him in a moderate risk category]).
The defendant is under the supervision of federal authorities for the next 15 years. He testified, under oath, and was *483 questioned by both his attorney and the court.[6] The defendant commenced his testimony by reading a written statement he had prepared in which he expressed his remorse and revulsion over his prior conduct. The defendant not only empathized with the victims of child pornography, he acknowledged the exploitive nature of the pornography industry. Defendant did not attempt to cast blame on his family upbringing, his socio-economic status, or any other factors. He took full responsibility for his deviant conduct and did not attempt to minimize or justify it. In answering the court’s questions, the defendant was direct. He did not attempt to exaggerate his achievements and accomplishments during treatment. This court found the defendant’s testimony to be credible, rehable and worthy of belief.
The defendant was accompanied to court by his mother and father, both of whom attended every court session. Their support was admirable and will, no doubt, assist in defendant’s eventual rehabilitation.
During oral arguments, both parties highlighted portions of a forensic report prepared by the Federal Correctional Institution (FCI) at Seagoville, Texas. The report was dated October 13, 2011. FCI Seagoville is a federal treatment facility that provides an introductory level of treatment to incarcerated inmates who are assessed to be at low or moderate risk for sexual reoffending. The defendant enrolled in a voluntary, nonresidential treatment program on February 26, 2010. Defendant successfully completed the program on February 25, 2011.
Defendant’s counsel highlighted the report’s diagnostic impression that there was no evidence to indicate that the defendant has had any history of contact offending children or adolescents. According to the report, he does not appear to meet the criteria for a diagnosis of pedophilia or hebephilia.
The prosecutor, on the other hand, highlighted the report’s diagnostic impression that the defendant has had significant problems with impersonal sexual behavior over many years.
This court has carefully reviewed all of the reports submitted in consideration of the case, has reviewed the case law that addresses all the relevant issues, and has taken into consideration the sworn testimony of the defendant. This court concurs with *484 my learned colleague, Judge Mark Dwyer, who, in his analysis of the same issues that are before me, in dictum stated:[7]
“The language of the sex offender classification rules assigns points to possessors of child pornography for the ‘number’ of victims, and the ‘stranger’ classification of victims, in a way that was intended by the authors of the guidelines to apply to physical contact, and not to defendants who possessed and shared child pornography. The resultant language will typically add 50 points to the sex offender totals of those who possess child pornography, whether or not they are as dangerous as physical offenders. As a result, many possessors of child pornography who are not serious threats to the community will presumptively be classified as level two offenders. Since this court does not think that result would be consistent with the intent of the authors of the SORA guidelines it anticipates that many SORA applications made as to such defendants should result in downward departures to level one. The Court of Appeals seems sympathetic to this conclusion. In Johnson the Court interposed dictum of its own, noting that adding points in child pornography cases because the child victims and the defendants are ‘strangers’ might generally produce ‘a seemingly anomalous result’ not intended by the authors of the SORA guidelines.” (People v Yen, 33 Misc 3d 1234[A], 2011 NY Slip Op 52240[U], *4 [2011].)
Accordingly, in addition to accepting the scoring of the Board that defendant is a risk level one offender, the court also finds that the defendant is not a serious threat to the community and has made “exceptional” progress in response to treatment. Accordingly, even if the defendant should be scored as a risk level two offender, his motion, for a downward departure to risk level one, is hereby granted.
Ordered: Pursuant to Correction Law § 168-n (1), the court determines that the defendant is:
_a sexually violent offender;
_a predicate sex offender;
_a sexual predator;
X none of the foregoing;
*485 _decision reserved;
and it is further ordered: that the court determines with respect to the level of notification that the defendant is rated a risk level: one.

. The People do not dispute that this is the Board’s current policy but rely upon the well established case law that previously required offenders of child pornography be scored under those risk factors.

. People v Johnson, 11 NY3d 416 (2008).

. As stated earlier, the Board scored the defendant a presumptive risk level one offender but recommended an upward departure to risk level three.

. The People also cited People v Freeman (85 AD3d 1335 [3d Dept 2011]), but in that case, the offender had a prior conviction for endangering the welfare of a child. Although the offender before this court has a history of sexual dysfunction, he has no prior criminal record.

. See also People v Yen (33 Misc 3d 1234[A], 2011 NY Slip Op 52240[U] [2011]), where the court stated that since risk factors 3 and 7 are not reliable factors in child pornography cases, the offender’s motion for a downward modification was granted.

. Although given the opportunity to do so, the prosecutor elected not to question the defendant.

. Judge Dwyer’s decision was rendered December 8, 2011, prior to the Board’s change of scoring policy in cases of child pornography, adopting his analysis of SORA in light of the Johnson opinion.